UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GRACE RODRIGUEZ,

PLAINTIFF, CASE NO. 6:25-CV-2493-ACC-DCI

vs

FLORIDA DEPARTMENT OF TRANSPORTATION and MOATAZ HASSAN,

DEFENDANTS.
_______________________________________/

**DEFENDANTS, FLORIDA DEPARTMENT OF TRANSPORTATION'S AND MOATAZ HASSAN'S, MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendants, FLORIDA DEPARTMENT OF TRANSPORTATION ("FDOT") and MOATAZ HASSAN ("Hassan"), by and through their undersigned counsel, Whitelock & Associates, P.A., and pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 3.01(a), hereby file this Motion to Dismiss and Incorporated Memorandum of Law, and states as follows:

## I. INTRODUCTION

Plaintiff's Amended Complaint does not cure the defects identified in this Court's prior Order. In ruling on FDOT's first Motion to Dismiss, the Court held that Plaintiff's original Complaint was an impermissible shotgun pleading because Plaintiff failed to sufficiently separate her claims for relief. DE 33 at 9–10. Although the Court addressed certain merits issues for judicial efficiency, it ultimately dismissed the entire Complaint without prejudice because of the shotgun pleading defect. DE 33 at 18, 22–23. The Court then expressly instructed Plaintiff that, prior to

any amended pleading, she "should carefully review and remedy the deficiencies identified" in the Order and must comply with Federal Rule of Civil Procedure 11(b). DE 33 at 22–23.

Rather than heed the Court's instructions, the Plaintiff ignored them and then filed a longer, broader, but more confusing pleading. The Amended Complaint now impermissibly and frivolously adds Moataz Hassan, individually, as a defendant, asserting four new individual-capacity FCRA counts against him, and seeks judgment and relief against "Defendants" collectively, including a declaration that "Defendants' conduct violated Title VII" and the FCRA. DE 34 ¶¶ 2, 5–6, 115–139, Prayer for Relief (pp. 35-36). Although Plaintiff uses separate count headings, each of the eight counts incorporates all seventy-two general factual allegations "as if fully set forth" in that count. DE 34 ¶¶ 73, 85, 92, 106, 115, 121, 126, 132. That is not a meaningful cure. Furthermore, although the general allegations are separated by subsections based various claims, Plaintiff incorporates every one of those allegations into every count. *Id.*

The Court identified other substantive deficiencies in the original Complaint, which have not been cured. The Court held that Plaintiff's FCRA claims against FDOT are barred by Eleventh Amendment immunity. DE 33 at 10–12. The Court rejected Plaintiff's attempt to use alleged sex-based conduct to support a religious-harassment claim and found the religious-harassment allegations insufficient. DE 33 at 19–20. The Court also found Plaintiff's allegations concerning mentoring, professional guidance, an off-cycle evaluation, and constructive discharge lacking in factual detail and legal sufficiency. DE 33 at 13–15, 21–22. The Amended Complaint likewise does not cure these deficiencies.

Accordingly, the Amended Complaint should again be dismissed in its entirety as an impermissible shotgun pleading. In the alternative, each Count should be dismissed on 12(b) grounds as to both FDOT and Hassan. Moreover, any FCRA claim or relief against FDOT should

be dismissed or stricken with prejudice; the Prayer for Relief should be stricken to the extent it seeks FCRA relief against FDOT or otherwise fails to distinguish between Defendants and statutes. Lastly, and in light of prior warnings, Plaintiff should not be granted another opportunity to amend claims she already had a full and fair opportunity to plead.

## II. SUMMARY OF PERTINENT ALLEGATIONS

Plaintiff alleges that she is a female, practicing Christian, and former FDOT employee. DE 34 ¶ 4. Plaintiff alleges she was hired by FDOT on or about May 12, 2023. DE 34 ¶ 11. Plaintiff further alleges that she reported directly to Moataz Hassan, an FDOT Operations Engineer, who allegedly exercised supervisory authority over her job duties, performance evaluations, discipline, leave requests, professional-development opportunities, and continued employment. DE 34 ¶¶ 12–13.

The Amended Complaint asserts Title VII claims against FDOT and FCRA claims against Hassan individually. DE 34 ¶¶ 5–6. Plaintiff nevertheless alleges that FDOT is an employer under the FCRA and states that FCRA claims are asserted against FDOT "only to the extent permitted by law," despite the Court's prior ruling that FCRA claims against FDOT are barred in this Court. DE 34 ¶ 5; DE 33 at 10–12. The Amended Complaint contains eight counts: four (4) Title VII counts against FDOT and four (4) FCRA counts against Hassan individually. DE 34 ¶¶ 73–139. Plaintiff's seventy-two general factual allegations are divided into several separate topics, including Plaintiff's employment and chain of command, alleged sex-based harassment, alleged escalation of Hassan's conduct in 2024, alleged religious harassment, Plaintiff's complaints to Human Resources, alleged retaliation, and alleged constructive discharge. DE 34 ¶¶ 11–72. Despite those distinct factual groupings, each count incorporates all seventy-two general factual allegations. DE 34 ¶¶ 73, 85, 92, 106, 115, 121, 126, 132.

Plaintiff alleges that during her pre-hire interview on April 19, 2023, Hassan told her that "everything would be fine" as long as she never reported him to Human Resources. DE 34 ¶ 14. Plaintiff alleges that, from the outset of her employment, Hassan engaged in conduct she characterizes as sexual and gender-based, including possessive language, comments regarding Plaintiff's interactions with male coworkers, psychological intimidation, and threats to her job security. DE 34 ¶ 15. Plaintiff further alleges that, in June and July 2023, Hassan yelled at subordinates and slammed his phone on the ground in Plaintiff's presence. DE 34 ¶ 16. She alleges that Hassan repeatedly told her she was "his" and "belonged to him," stated that she was on a "short leash," referred to her as "very special" and his "secret box," and told her she needed to travel internationally with him. DE 34 ¶¶ 18–19. Plaintiff also alleges that, in October 2023, Hassan reprimanded her about her clothing, told her to "cover up" because male employees "couldn't control themselves," referred to "locker room talk," and commented that another female employee was not being looked at "like that." DE 34 ¶¶ 20–25.

Plaintiff alleges that Hassan's conduct escalated in 2024. She alleges that, on March 5, 2024, Hassan stated that in his country "women are considered second class citizens." DE 34 ¶ 26. Plaintiff further alleges that Hassan characterized her objections as "drama," restricted when she could take leave, required her to accompany him during the workday, prevented her from closing her office door, demanded that she smile and agree with him in public, and discouraged her from speaking with other managers. DE 34 ¶¶ 27–30, 35. Plaintiff also alleges that, in March 2024, Hassan grabbed her arm when she attempted to leave his office while ill, and that he later admitted at work that he had hit his wife. DE 34 ¶¶ 31–33.

Plaintiff alleges that, in April 2024, Hassan required her to accompany him to a hookah lounge after regular business hours. DE 34 ¶ 36. Plaintiff further alleges that, on April 17, 2024,

Hassan discussed his sex life and stated that he was seeking a woman who would do what he told her. DE 34 ¶ 37. Plaintiff characterizes that alleged statement as a sexual proposition and alleges that it formed the basis for a quid pro quo theory. DE 34 ¶¶ 38–39. Plaintiff alleges that the following day, April 18, 2024, Hassan brandished and waved a shovel in her direction during a work-related meeting, that multiple witnesses were present, and that Human Resources later advised Plaintiff that "waving a shovel is not against the law" and was Hassan's "business." DE 34 ¶¶ 40–44.

The Amended Complaint includes a subsection titled "Hassan's Religious Harassment." DE 34 ¶¶ 46–53. Plaintiff alleges that Hassan knew she was a practicing Christian and, between approximately September 2023 and May 2024, initiated unwelcome religious discussions with her on at least five occasions. DE 34 ¶¶ 46–47. Plaintiff alleges that Hassan presented her with a Quran and expected her to read it, expressed disapproval of her Christianity, and promoted the view that Islamic beliefs about gender roles should govern her conduct and submission in the workplace. DE 34 ¶¶ 48–50. Plaintiff further alleges that Hassan's alleged religious conduct was "intertwined" with his alleged sex-based domination and that he imposed religious-based behavioral expectations concerning Plaintiff's dress, silence, and submission to authority. DE 34 ¶¶ 51–53.

Plaintiff alleges that, in late April 2024, she complained to FDOT Human Resources Manager Marisol Bilbao about Hassan's alleged sexual harassment, possessive and controlling conduct, physical intimidation, and threats to her employment. DE 34 ¶ 54. Plaintiff alleges that she requested confidentiality because she feared retaliation. *Id.* Plaintiff further alleges that Bilbao advised her to alter her clothing and demeanor, stated that harassment "works both ways," characterized Plaintiff's concerns as interpersonal or cultural issues, and told Plaintiff that if she wanted to survive at FDOT, she needed to "put a smile on [her] face and shut up." DE 34 ¶ 55.

Plaintiff alleges that FDOT took no corrective action against Hassan following that complaint. DE 34 ¶ 56.

Plaintiff alleges that, on or about May 2, 2024, Bilbao disclosed the contents of Plaintiff's complaint to Hassan. DE 34 ¶ 57. Plaintiff alleges that, the following day, Hassan confronted her, stated that he no longer trusted her because she had reported him to Human Resources, told her he had her "in the palm of his hand," and threatened that he could have her removed from FDOT whenever he wanted. DE 34 ¶ 58. Plaintiff further alleges that, in or around May 2024, "another FDOT manager" told her that if she recanted her statements about Hassan, her job could be salvaged. DE 34 ¶ 60.

Plaintiff then alleges several retaliatory acts following her April 2024 HR complaint. She alleges that Hassan cancelled mentoring sessions and withdrew professional guidance, and she claims those sessions were tied to her career progression, promotion eligibility, career trajectory, and earning potential. DE 34 ¶ 61. Plaintiff also alleges that, in or around May 2024, FDOT management initiated an off-cycle negative performance evaluation despite Plaintiff having no prior negative evaluations or documented performance deficiencies. DE 34 ¶¶ 62–63. Plaintiff alleges that the off-cycle evaluation was outside FDOT's regular review schedule, was not imposed on similarly situated male employees who had not engaged in protected activity, and was used to manufacture performance deficiencies. DE 34 ¶ 63.

Plaintiff alleges that, on June 11, 2024, she filed a formal complaint with FDOT's Equal Opportunity Office alleging sexual harassment and retaliation. DE 34 ¶ 64. She alleges that, within hours of filing that EOO complaint, she was summoned to a meeting with senior FDOT management, including District Director Mike Heffinger. DE 34 ¶ 65. Plaintiff alleges that, at that meeting, management told her that her position was "no longer viable," pressured her to resign

immediately under threat of termination, and falsely represented that termination would permanently bar her from future FDOT employment. DE 34 ¶ 66. Plaintiff characterizes this as a constructive discharge. DE 34 ¶ 67. Plaintiff also alleges that FDOT's two-month deferral of her effective separation date was a "calculated maneuver" to obscure the timing of her resignation, and that FDOT "engineered a paper record" to create the appearance of an orderly, voluntary departure. DE 34 ¶¶ 68–69. Plaintiff further alleges that FDOT's internal investigation concluded that Hassan had not committed violations of Title VII or the FCRA, but that FDOT terminated Hassan shortly after the investigation ended. DE 34 ¶¶ 70–71. Plaintiff alleges that this alleged inconsistency supports an inference of pretext. DE 34 ¶ 72.

Count I asserts a Title VII hostile-work-environment claim against FDOT based on sex. DE 34 ¶¶ 73–84. Count II asserts a Title VII sex-discrimination claim against FDOT based on alleged tangible employment actions and constructive discharge. DE 34 ¶¶ 85–91. Count III asserts a Title VII religious-harassment hostile-work-environment claim against FDOT. DE 34 ¶¶ 92–105. Count IV asserts a Title VII retaliation claim against FDOT. DE 34 ¶¶ 106–114. Counts V through VIII assert parallel claims under the FCRA against Hassan individually. DE 34 ¶¶ 115–139.

## III. STANDARD

To satisfy the pleading requirements of the Federal Rules of Civil Procedure, a complaint must contain a short and plain statement showing an entitlement to relief and must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To survive a motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim. *Georgia Carry.Org, Inc v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). Thus, minimum pleading standards "require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

As the Eleventh Circuit has explained, the *Twombly/Iqbal* principles require that a complaint's allegations be "enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). Thus, legal conclusions in a complaint without adequate factual support are not legally entitled to an assumption of truth. *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011); *see also Jacobs v. Tempur Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (legal conclusions are not entitled to assumption of truth).

## IV. LEGAL ARGUMENT

### A. The Amended Complaint Should Be Dismissed in Its Entirety Because It Remains an Impermissible Shotgun Pleading.

The Amended Complaint should be dismissed in its entirety because Plaintiff has not cured the Rule 8 and Rule 10 defects identified in the Court's prior Order. Federal Rule of Civil Procedure 8 requires a complaint to contain a "short and plain statement" showing entitlement to relief. Fed. R. Civ. P. 8(a)(2). Rule 10 further requires a party to state claims in numbered

paragraphs and, where doing so would promote clarity, to state each claim founded on a separate transaction or occurrence in a separate count. Fed. R. Civ. P. 10(b).

Complaints that fail to comply with those requirements are shotgun pleadings. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320–23 (11th Cir. 2015). The Eleventh Circuit has identified several categories of shotgun pleadings, including complaints that contain conclusory, vague, or immaterial facts not obviously connected to any particular cause of action; complaints that fail to separate each cause of action into a different count; and complaints that assert multiple claims against multiple defendants without specifying which defendant is responsible for which conduct. *Id.* at 1321–23. The unifying problem is lack of fair notice. *Id.* at 1323. That problem remains here. The Court previously dismissed Plaintiff's original Complaint as an impermissible shotgun pleading and directed Plaintiff to remedy the deficiencies identified in the Order. DE 33 at 9–10, 22–23. Plaintiff's amendment formally separates the count headings, but it does not separate the claims in substance. Instead, each count incorporates all seventy-two general factual allegations "as if fully set forth" in that count. DE 34 ¶¶ 73, 85, 92, 106, 115, 121, 126, 132. Those seventy-two allegations are not merely neutral background facts common to every claim. They include claim-specific, theory-specific, and defendant-specific allegations concerning alleged sex-based harassment, alleged religious harassment, alleged retaliation, alleged constructive discharge, alleged FDOT Human Resources conduct, and alleged individual conduct by Hassan. DE 34 ¶¶ 11–72.

That is not a meaningful cure. Count I, a Title VII sex-based hostile-work-environment claim against FDOT, incorporates allegations concerning alleged religious harassment, alleged retaliation, alleged constructive discharge, and the factual predicates for individual-capacity FCRA claims against Hassan. DE 34 ¶¶ 46–72, 73. Count II, a Title VII sex-discrimination claim,

incorporates all allegations concerning religion and retaliation, and then relies on alleged mentoring cancellations, an off-cycle evaluation, and constructive discharge without clearly distinguishing which facts are alleged to be sex discrimination as opposed to retaliation. DE 34 ¶¶ 46–72, 85–91. Count III, a Title VII religious-harassment claim, incorporates the entire sex-harassment narrative even though the Court already rejected Plaintiff's attempt to use alleged sex-based conduct to support a religious-harassment claim. DE 33 at 19–20; DE 34 ¶¶ 14–45, 92–105. Count IV, a Title VII retaliation claim, incorporates all sex- and religion-based allegations without tethering each alleged retaliatory act to protected activity, decisionmaker knowledge, material adversity, or causation. DE 34 ¶¶ 14–72, 106–114.

FDOT is not arguing that a plaintiff may never incorporate common background allegations into multiple counts. The problem here is that Plaintiff has loaded the general factual section with claim-specific allegations and then incorporated all of them into every count, regardless of whether they have anything to do with the particular claim or defendant at issue. A sex-harassment count does not need every religious-harassment allegation. A religious-harassment count does not need every sex-harassment allegation. A retaliation count does not need every allegation of alleged hostile environment unless Plaintiff explains how those facts connect to protected activity, material adversity, and causation. And individual FCRA counts against Hassan do not need wholesale incorporation of FDOT-specific allegations concerning HR, EOO, senior management, and agency-level employment processes unless Plaintiff identifies the factual connection.

The Eleventh Circuit has repeatedly condemned pleadings that require courts and defendants to sift through allegations and decide for themselves which facts support which claims. See *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366–67 (11th Cir. 1996);

*Weiland*, 792 F.3d at 1323; *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356–59 (11th Cir. 2018). That is especially true where, as here, Plaintiff already had the benefit of FDOT's first motion, the Court's Order [D.E. 33], and an express instruction to remedy the deficiencies identified by the Court and comply with Rule 11(b). DE 33 at 22–23. Accordingly, the Amended Complaint should be dismissed in its entirety as an impermissible shotgun pleading.

### B. <u>Counts I, III, V, and VII (harassment-based claims) Remain Subject to Dismissal as Part of Plaintiff's Shotgun Pleading, and FDOT Preserves Its Prior Merits Arguments.</u>

FDOT acknowledges that the Court previously stated that Plaintiff's sex-based hostile-work-environment allegations could be plausible at the pleading stage if not for Plaintiff's shotgun complaint. DE 33 at 15–18. FDOT therefore does not repeat its prior arguments in full. However, FDOT submits that all of Plaintiff's harassment-based claims are subject to dismissal because they remain part of an impermissible shotgun pleading. Specifically, Plaintiff incorporates all seventy-two general factual allegations into Count I, including allegations concerning religious harassment, retaliation, constructive discharge, HR's response, FDOT's internal investigation, and individual FCRA theories against Hassan. DE 34 ¶ 73. Count I therefore suffers from the same fair-notice defect addressed above.

As to Counts I and IV specifically (sex-based harassment), the Defendants reincorporate FDOT's prior arguments that Plaintiff does not plausibly allege conduct that was sexual in nature, directed at Plaintiff because of sex, or sufficiently severe or pervasive to alter the terms and conditions of employment. See DE 15 at 12–18. The Amended Complaint does not materially change that analysis. The pleading adds labels such as "sexualized commentary," "sexually charged," "possessive sexual control," "explicit sexual propositions," "sexual dominance," and

"quid pro quo sexual harassment," but those labels do not comport with the facts pleaded, which are largely innocuous and non-sexual. DE 34 ¶¶ 15, 18–19, 37–39, 75, 77–79, 88, 101.

The same problem runs throughout Counts I, III, V, VII which are based in harassment.[1] Plaintiff pleads workplace conflict, abrasive supervision, alleged intimidation, alleged possessive language, criticism of attire, and generalized innuendo, then places those allegations under sexualized labels. However, Title VII does not turn innocuous, ambiguous, or nonsexual workplace conduct into actionable sexual harassment merely because a plaintiff characterizes it as "sexual dominance" or "sex-based domination." *Id.* At a minimum, FDOT preserves its position that the factual allegations themselves, as opposed to Plaintiff's labels and conclusions, do not plausibly establish a sex-based hostile work environment under Title VII. Such inference stacking and reliance on subjective interpretations of ordinary workplace interactions are insufficient under *Iqbal* and *Twombly*.

### C. Counts V Through VIII Should Be Dismissed With Prejudice Because the FCRA Does Not Impose Individual Liability on Supervisors.

Counts V through VIII are asserted against Hassan individually under the FCRA. DE 34 ¶¶ 115–139. They fail as a matter of law. Plaintiff attempts to avoid the Court's prior Eleventh Amendment ruling by shifting FCRA claims from FDOT to Hassan individually. But the absence of Eleventh Amendment immunity does not create a statutory cause of action against an individual supervisor. At least one Florida court noted that this principle is "not new" in a decision that is eighteen years old at the time of this filing. *Patterson v. Consumer Debt Management and Educ., Inc.*, 975 So.2d 1290, 1291 (4th DCA 2008).

[1] The argument also extends to all other counts as they are based on constructive discharge which carries a higher standard.

Notwithstanding, individual capacity suits are not permitted under the FCRA. Specifically, the FCRA makes it an unlawful employment practice for an "employer" to discriminate with respect to compensation, terms, conditions, or privileges of employment. Fla. Stat. § 760.10(1)(a). Its retaliation subsection likewise identifies an employer, employment agency, joint labor-management committee, or labor organization. Fla. Stat. § 760.10(7) (2026). It does not however create individual-capacity liability against supervisors. The FCRA defines "employer" as a person employing fifteen or more employees and "any agent of such a person," but that agent language does not impose personal liability on individual employees. It ensures employer liability for acts of agents, not individuals. *See Heriveaux v. Junior,* 2024 WL 1433611 at 2 n. 3 (11th Cir. 2024) (individual liability does not exist under FCRA); *see also Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (no individual liability under FCRA); *see also Patterson v. Consumer Debt Mgmt. & Educ., Inc.*, 975 So. 2d 1290, 1292 (Fla. 4th DCA 2008) (same); *Abram v. Aldi Inc.*, 2017 WL 11888199 at 3 (M.D. Fla. 2017) ("The Court concludes that [plaintiff's] claim against [individual] fails because the FCRA does not permit the imposition of individual liability on supervisory-employee defendant.").

**D. <u>Any FCRA Claim, Theory, or Relief Against FDOT Remains Barred and Should Be Dismissed or Stricken.</u>**

The Court has already resolved this issue. In its prior Order, the Court held that FDOT is a state agency entitled to Eleventh Amendment immunity and that Plaintiff's FCRA claims against FDOT are barred in federal court. DE 33 at 10–12. Plaintiff expressly did not dispute that ruling. DE 33 at 11. Plaintiff therefore cannot continue to plead FCRA theories against FDOT or request FCRA-based relief against FDOT. Yet the Amended Complaint does just that. Plaintiff alleges that FDOT is an employer under the FCRA and states that "FCRA claims are asserted against FDOT only to the extent permitted by law." DE 34 ¶ 5. That caveat does not cure the defect. The

Court already held that the Eleventh Amendment bars FCRA claims against FDOT in this Court. DE 33 at 10–12. There is no remaining "extent permitted by law" as to FDOT in this federal action.

The problem is not limited to paragraph 5. FCRA allegations remain interwoven throughout the Amended Complaint and incorporated into each Count. The Amended Complaint also seeks judgment against "Defendants" collectively and requests a declaration that Defendants' conduct violated Title VII and the FCRA, as well as attorneys' fees under both statutes. DE 34, Prayer for Relief. At a minimum, any FCRA claim, theory, declaration, damages request, fee request, or other relief directed at FDOT should be dismissed or stricken with prejudice.

### E. <u>Plaintiff's Discrimination Counts (II and VI) Fail Because Plaintiff Still Does Not Plead a Tangible Employment Action or Constructive Discharge.</u>

Counts II and V should be dismissed because Plaintiff again fails to plead a sex-based tangible employment action or constructive discharge. The Court already addressed this theory in its prior Order. Relying on *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 358 (2024), the Court recognized that even though a Title VII plaintiff need not show "significant" harm, the alleged injury still must concern the terms or conditions of employment. DE 33 at 13–14. The Court then held that Plaintiff's allegations concerning denied mentoring, professional guidance, and an off-cycle evaluation were insufficient because Plaintiff did not plead details regarding the mentoring or guidance allegedly denied and did not plead whether the off-cycle evaluation resulted in any negative consequence affecting the terms or conditions of employment. DE 33 at 13–14.

The Amended Complaint does not cure those defects. Plaintiff still relies on the same categories of conduct: cancellation of mentoring and professional-development sessions, initiation of an off-cycle negative performance evaluation, and an alleged constructive discharge. DE 34 ¶¶ 61–68, 87–90. Plaintiff now adds that the mentoring sessions were tied to "career progression," "promotion eligibility," "career trajectory," and "earning potential," but she still does not identify

the sessions, the formal program involved, any promotion allegedly lost, any pay or title affected, or any concrete change to a term, condition, or privilege of employment. DE 34 ¶ 61. Labels about "career trajectory" and "earning potential" do not supply the missing facts.

The same is true of the off-cycle evaluation. Plaintiff alleges that FDOT initiated an off-cycle negative performance evaluation outside the regular review schedule and used it to "manufacture" performance deficiencies. DE 34 ¶¶ 62–63. But she still does not allege what the evaluation said, who issued it, whether it was finalized, whether she received a lower rating, whether she was disciplined, or whether the evaluation caused any loss of pay, benefits, title, duties, schedule, or employment status. Even after *Muldrow*, a plaintiff must plead some concrete job-related injury to an identifiable term or condition of employment. *See Arnold v. United Airlines, Inc.*, 142 F.4th 460, 471 (7th Cir. 2025) (performance improvement plan and routine duty changes were not actionable); *see also Davis v. Orange County*, 2025 WL 948934 at 3 (M.D. Fla. 2025) (written reprimands not actionable). Accordingly, Plaintiff's off-cycle evaluation allegations remain exactly what the Court already found insufficient: an alleged process with no pleaded employment consequence.

Plaintiff's constructive-discharge theory fares no better. The Amended Complaint still alleges that Plaintiff was told her position was no longer viable, resigned under threat of termination, and had an effective separation date approximately two months later. DE 34 ¶¶ 64–69. Plaintiff now labels the two-month deferral a "calculated maneuver" and alleges that FDOT "engineered a paper record" to make the separation appear voluntary. DE 34 ¶¶ 68–69.[2] However, the resignation is no less voluntary than it was in the prior pleading merely because Plaintiff now adds rhetoric about FDOT's supposed motive. A deferred separation date approximately two

[2] Plaintiff recasts a deferred effective separation date, during which FDOT continued to compensate her, as evidence of coercion. That allegation does not plausibly establish an adverse employment action or constructive discharge.

months later undermines, rather than supports, the assertion that Plaintiff had no reasonable choice but to resign immediately.

### F. <u>Counts III and VII Fails Because Plaintiff Still Does Not Plead Severe or Pervasive Religious Harassment.</u>

Counts III and VII should separately be dismissed because Plaintiff still does not plead a plausible Title VII hostile work environment claim based on religion. The Court already rejected this theory. In its prior Order, the Court held that Plaintiff could not use alleged sex-based conduct to support a religious-harassment claim absent facts showing the harassment was also based on religion. DE 33 at 19–20. The Court further held that Plaintiff's allegations that Hassan engaged in religious discussions and gave her a Quran were insufficient to plead severe or pervasive religious harassment. DE 33 at 20. The Amended Complaint does not cure that defect. Plaintiff again attempts to bootstrap sex-based and supervisory conduct into a religious-harassment claim by alleging that Hassan's religious conduct was "intertwined" with alleged sex-based domination and occurred in the same coercive supervisory context. DE 34 ¶¶ 51, 101–102.

Plaintiff alleges that Hassan initiated religious discussions on "at least five separate occasions" between September 2023 and May 2024, gave her a Quran, expressed disapproval of her Christianity, and promoted Islamic beliefs about gender roles. DE 34 ¶¶ 46–53, 96–103. She still does not plead what Hassan actually said, when the discussions occurred, how long they lasted, what statement expressed disapproval of Christianity, whether she was required to participate in any religious practice, or whether any job consequence was tied to her Christian faith. These omissions are fatal under Title VII's severe-or-pervasive standard. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275-1276 (11th Cir. 2002). Plaintiff's allegations regarding dress, silence, and submission are also conclusory. *Nurse v. City of Alpharetta*, 775 Fed.Appx. 603, 607 (11th Cir. 2019). The actual clothing allegations are pleaded as sex-based allegations concerning male

employees. However, Plaintiff now labels those same events as religiously motivated without alleging any *Twombly* facts showing Hassan connected those comments to Plaintiff's Christianity. DE 34 ¶¶ 53, 98.

### G. Counts IV and VIII Fail Because Plaintiff Still Does Not Plead Facts Supporting an Inference of Adverse Retaliation or Causation

Counts IV and VIII should be dismissed because Plaintiff still does not plausibly plead retaliation under Title VII. To state a retaliation claim, Plaintiff must allege that she engaged in protected activity, suffered a materially adverse action, and that the protected activity caused the materially adverse action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Unlike Plaintiff's discrimination claim, Count IV is governed by *Burlington Northern's* materially adverse standard, and an employee must allege facts showing that the challenged conduct would dissuade a reasonable employee from making or supporting a charge of discrimination. *Burlington Northern*, 548 U.S. at 68.

Here, Plaintiff identifies several alleged "retaliatory" acts: disclosure of her HR complaint to Hassan, Hassan's May 3, 2024, confrontation, cancellation of mentoring and professional-development sessions, initiation of an off-cycle evaluation, and an alleged constructive discharge on June 11, 2024. DE 34 ¶¶ 108–111. These allegations still do not plausibly plead materially adverse retaliation. Disclosure of a complaint during an internal workplace process is not, standing alone, a materially adverse action. Nor is Hassan's alleged statement that he had Plaintiff "in the palm of his hand" and could have her removed, absent facts showing that the threat itself produced a concrete employment consequence. DE 34 ¶¶ 57–58, 111.

Plaintiff's constructive-discharge theory also remains insufficient. The Court previously held that Plaintiff's constructive-discharge allegations were legal conclusions unsupported by

adequate facts. DE 33 at 21–22. The Amended Complaint does not materially change that. Plaintiff still alleges that she was told her position was no longer viable, that she resigned under threat of termination, and that her separation date was deferred approximately two months. DE 34 ¶¶ 64–69. Plaintiff now characterizes the deferred separation date as a "calculated maneuver" and alleges that FDOT "engineered a paper record," but those are conclusions. DE 34 ¶¶ 68–69. They do not plausibly show working conditions so objectively intolerable that a reasonable person would have had no choice but to resign.[3]

Count IV also fails to plead but for causation. Plaintiff alleges that she filed an EOO complaint on the morning of June 11, 2024, and that later that day senior management told her the position was no longer viable. DE 34 ¶¶ 64–66, 110–111(e). But she does not plead facts showing that Heffinger or the other alleged decisionmakers knew of the EOO complaint before the meeting, who told them, when they were told, or how the complaint caused the alleged resignation. A bare allegation that the meeting occurred "because of" the EOO complaint is a legal conclusion, not a factual allegation. *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1053–54 (11th Cir. 2020). Of course, this inquiry is only appropriate to the extent Plaintiff has pled facts supporting a constructive discharge, which she has failed. In short, Count IV repackages the same alleged workplace events under a retaliation label without pleading facts that raise an inference of the requisite causation. As Plaintiff's retaliation allegations do not plausibly plead actionable retaliation under Title VII. Count IV should be dismissed.

[3] Plaintiff's conclusory cat's-paw allegation does not cure the defect. Although Plaintiff alleges that decisionmakers relied on information and recommendations supplied by Hassan and Bilbao, she does not identify any specific recommendation, when it was made, who received it, what information was allegedly false, or how it proximately caused a materially adverse action. DE 34 ¶ 113.

## V. CONCLUSION

Plaintiff was given a clear opportunity to cure the defects identified in the Court's prior Order. The Court dismissed the original Complaint as a shotgun pleading, identified multiple substantive deficiencies, held that FCRA claims against FDOT are barred in this Court, and expressly instructed Plaintiff to remedy those deficiencies and comply with Rule 11(b). DE 33 at 10–12, 19–23. The Amended Complaint does not do so. Instead, Plaintiff filed a longer pleading that still incorporates all seventy-two general factual allegations into every count, continues to interweave FCRA theories and relief against FDOT, and asserts legally unavailable individual-capacity FCRA claims against Hassan. For these reasons, Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint in its entirety as an impermissible shotgun pleading, among the other reasons stated. Defendants further request that dismissal be with prejudice, or at minimum without further leave to amend as to the claims and theories Plaintiff has already had an opportunity to cure. Plaintiff had the benefit of FDOT's first Motion to Dismiss, the Court's detailed Order, and an express Rule 11(b) warning. Further amendment would reward serial repleading and require Defendants to continue responding to theories Plaintiff has already failed to plead despite clear warning.

**WHEREFORE**, Defendants, Florida Department of Transportation and Moataz Hassan, respectfully request that this Court grant their Motion to Dismiss Plaintiff's Amended Complaint as set forth above, strike any improper FCRA or Title VII relief, deny further leave to amend, and grant such further relief as the Court deems just and proper.

Respectfully submitted,

WHITELOCK & ASSOCIATES, P.A.
300 Southeast Thirteenth Street
Fort Lauderdale, Florida 33316
Phone No.: (954) 463-2001
Facsimile No.: (954) 463-0410
Counsel for Defendants, Florida Department of Transportation and Moataz Hassan

*/s/Christopher J. Whitelock*
CHRISTOPHER J. WHITELOCK
Florida Bar No. 067539
DAVID S. FRANK
Florida Bar No. 93906

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 12, 2026, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, by either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

s/Christopher J. Whitelock
CHRISTOPHER J. WHITELOCK

## SERVICE LIST

Katherine A. Chin, Esq.
Chin Law, P.A.
33 Southwest 2nd Avenue, Suite 1100
Miami, FL 33177
e-mail: kc@legalchin.com