UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**GRACE RODRIGUEZ,**

**Plaintiff,**

**v.**

**Case No.: 6:25-cv-2493-ACC-DCI**

**FLORIDA DEPARTMENT OF TRANSPORTATION and MOATAZ HASSAN,**

**Defendants.**

---

**ORDER**

This cause comes before the Court on Defendants Florida Department of Transportation ("FDOT") and Moataz Hassan's ("Defendant Hassan") Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 37). Plaintiff Grace Rodriguez ("Rodriguez") has responded in opposition to Defendants' Motion. (Doc. 39). For the reasons set forth below, Defendants' Motion will be granted in part and denied in part.

## I. BACKGROUND

This case arises from former FDOT Operations Engineer Defendant Hassan's "unwelcome conduct" toward Plaintiff throughout her employment, which eventually lead to Plaintiff's "constructive discharge" from FDOT. (Doc. 34 ¶¶ 12, 15, 39, 71). Defendant Hassan's alleged unwelcome conduct began as early as Plaintiff's interview on April 19, 2023, when "Hassan told Plaintiff that 'everything

would be fine as long as [she] never reported him to Human Resources.'" (*Id.* ¶ 14). Plaintiff alleges that she understood this statement to mean "that reporting sexual misconduct would jeopardize her job." (*Id.*). On May 12, 2023, Plaintiff was hired by FDOT as a "Transportation Operations Supervisor within District Five operations[.]" (*Id.* ¶ 11). Plaintiff reported directly to Defendant Hassan, "who exercised direct supervisory authority over Plaintiff, including the power to assign and modify her job duties, prepare and submit her performance evaluations, recommend or impose discipline or termination, approve or deny leave requests, [etc.]" (*Id.* ¶ 12).

**A. Allegations Regarding Plaintiff's Employment During 2023**

Plaintiff alleges that during June and July 2023, Defendant Hassan "frequently yelled at the top of his lungs at subordinates and slammed his phone on the ground in Plaintiff's presence[.]" (*Id.* ¶ 16). Plaintiff further alleges that "[i]n or around October 5 and 6, 2023," Defendant Hassan repeatedly reprimanded her "over several days" for her attire, telling her to "cover up" because the male employees could not "control themselves" while refusing to disclose what those employees were saying during this "locker room talk." (*Id.* ¶ 20). When Plaintiff pointed out another female employee to Defendant Hassan who she felt wore "more revealing" attire, Defendant Hassan replied, "[n]o one is even looking at her like that." (*Id.* ¶ 22). Then, on October 6, 2023, Hassan again confronted Plaintiff about her attire, complaining that her clothing was "too baggy[.]" (*Id.* ¶ 24). Defendant Hassan allegedly told Plaintiff

"not to come to the office dressed that way again." (*Id.*). According to Plaintiff, Defendant Hassan's comments were not based on any written dress code at FDOT. (*Id.* ¶ 25).

**B. Allegations Regarding Plaintiff's Employment During 2024**

On March 5, 2024, in response to Plaintiff's concerns regarding how male subordinates treated her, Defendant Hassan allegedly told Plaintiff that "in [his] country, women are considered second class citizens." (*Id.* ¶ 26). According to Plaintiff, when she objected to Defendant Hassan's conduct, he "reacted with anger" and characterized her objections as "drama." (*Id.* ¶ 27). Plaintiff also alleges that sometime in March 2024, Defendant Hassan told her not to take time off work when he was in the office and "expressed anger" when Plaintiff was unavailable to perform "clerical tasks" for him, "despite Plaintiff's supervisory role[.]" (*Id.* ¶ 28). For instance, sometime in March 2024, when Plaintiff was ill and asked for permission to leave work, Defendant Hassan "aggressively grabbed Plaintiff by the arm and physically restrained her, telling her not to leave." (*Id.* ¶ 31).

Plaintiff also alleges that sometime in March 2024, Defendant Hassan was arrested for domestic violence and "admitted to Plaintiff at work that he had hit his wife." (*Id.* ¶ 33). In addition, Plaintiff alleges that Defendant Hassan required her to "accompany him on non-work-related outings." (*Id.* ¶ 35).

Plaintiff further alleges that on April 17, 2024, Defendant Hassan "initiated an unsolicited discussion with Plaintiff about his sex life, stating that he had not had

sex in a long time and that he was seeking a woman who would do what he told her[,]" which Plaintiff "reasonably perceived" as a sexual proposition. (*Id.* ¶¶ 37–38). "[A]fter Plaintiff refused Hassan's sexual demand," his "conduct toward her immediately escalated[.]" (*Id.* ¶ 39). On April 18, 2024, during a work-related meeting following a bomb incident in District Seven, Defendant Hassan allegedly "brandished and waved a shovel in Plaintiff's direction in an aggressive manner, as if to strike her" in front of multiple witnesses. (*Id.* ¶¶ 40, 42). Plaintiff alleges that when she reported this incident to Human Resources personnel, they "advised Plaintiff that waving a shovel is not against the law and that if Hassan wanted to wave a shovel, that is his business." (*Id.* ¶ 44) (cleaned up). Defendant Hassan was not disciplined for the incident. (*Id.*).

Plaintiff alleges that in late April 2024, she complained to FDOT Human Resources Manager Marisol Bilbao ("Bilbao") about Defendant Hassan's conduct and "expressly requested confidentiality because she feared retaliation." (*Id.* ¶ 54). Plaintiff alleges that Bilbao advised her to "alter her clothing and demeanor to avoid being perceived as causing problems;" told her that harassment "works both ways;" characterized her concerns as "interpersonal or cultural issues rather than policy violations;" and suggested that her attire "could expose her to accusations of impropriety[.]" (*Id.* ¶ 55) (cleaned up). Plaintiff also alleges that Bilbao told her "that if she wanted to survive at FDOT, she needed to 'put a smile on [her] face and shut up.'" (*Id.*).

Despite Plaintiff's request for confidentiality, on May 2, 2024, Bilbao allegedly disclosed Plaintiff's complaint to Defendant Hassan and "coordinated with him regarding Plaintiff's employment[.]" (*Id.* ¶ 57). As a result, on May 3, 2024, Defendant Hassan told Plaintiff he did not trust her anymore because she reported him to Human Resources, said he had Plaintiff "in the palm of his hand[,]" and "threatened that he could have her removed from FDOT whenever he wanted." (*Id.* ¶ 58). According to Plaintiff, after she reported this incident, Human Resources again shared her concerns with Defendant Hassan while failing to take any corrective action. (*Id.* ¶ 59). Sometime in May 2024, Plaintiff alleges that an FDOT manager told her that "if she recanted her statements about Hassan, her job could be salvaged." (*Id.* ¶ 60).

After Plaintiff complained to Human Resources, Plaintiff alleges that Defendant Hassan "cancelled previously scheduled formal mentoring sessions and withdrew professional guidance[.]" (*Id.* ¶ 61). Plaintiff alleges that these mentoring sessions "were tied to Plaintiff's career progression within FDOT's supervisory track[.]" (*Id.*). Plaintiff also alleges that in or around May 2024, FDOT management "initiated an off-cycle negative performance evaluation of Plaintiff" and "Plaintiff had no prior negative evaluations of documented performance deficiencies during her employment." (*Id.* ¶ 62). According to Plaintiff, this off-cycle evaluation "initiated outside FDOT's regular review schedule" was used to "manufacture

purported performance deficiencies where none previously existed, laying the groundwork for pretextual adverse employment action against Plaintiff." (*Id.* ¶ 63).

### C. Allegations Spanning Plaintiff's Employment or Without a Specific Timeframe

Plaintiff also alleges that throughout her employment, Defendant Hassan repeatedly told her that she was "his" and she "belonged to him[.]" (*Id.* ¶ 18). Additionally, when Defendant Hassan overheard Plaintiff speaking with male coworkers, he accused her of "liking" them. (*Id.*). According to Plaintiff, Defendant Hassan also commented that Plaintiff was on a "short leash" while mimicking a pulling motion, called Plaintiff "very special" and his "secret box[,]" and told Plaintiff "she needed to travel internationally with him." (*Id.* ¶ 19). Plaintiff alleges Defendant Hassan did not speak this way to male employees. (*Id.*). Plaintiff also alleges that "[c]oworkers and managers acknowledged that Hassan exhibited a pattern of hostility toward women in the workplace, with multiple women being reduced to tears as a result of Hassan's conduct[.]" (*Id.* ¶ 34).

Plaintiff further alleges that between September 2023 and May 2024, Defendant Hassan initiated five "unwelcome religious discussions with Plaintiff" and knew that "Plaintiff is a practicing Christian." (*Id.* ¶¶ 46–47). These five discussions "expressed disapproval of Plaintiff's Christianity and promoted the view . . . that women in his country are considered second-class citizens[.]" (*Id.* ¶ 49).

According to Plaintiff, Defendant Hassan once "presented Plaintiff with a Quran and expected her to read it." (*Id.* ¶ 48).

Plaintiff also alleges that Defendant Hassan required Plaintiff to "accompany him throughout the workday" but then "reprimanded her for failing to complete tasks that could not reasonably be performed while she was required to remain at his side[.]" (*Id.* ¶ 29). Defendant Hassan also allegedly told Plaintiff that she was not allowed to close her office door, ordered her to smile and agree with him in public, discouraged her from speaking with other FDOT managers, and gave Plaintiff the "silent treatment" when she did not comply. (*Id.* ¶¶ 32, 35).

**D. Constructive Discharge**

On June 11, 2024, Plaintiff alleges that she filed a formal complaint with FDOT's Equal Opportunity Office regarding sexual harassment and retaliation (the "EOO Complaint"). (*Id.* ¶ 64). Plaintiff alleges that a few hours after she filed her EOO Complaint, she was "summoned" to a meeting with "senior FDOT management, including District Director Mike Heffinger [("Heffinger")]" and was informed that her position was "no longer viable." (*Id.* ¶ 65). According to Plaintiff, she was pressured to "resign immediately under threat of termination" and FDOT management "falsely represented to Plaintiff that if she were terminated, rather than permitted to resign, she would be permanently barred from seeking any other employment with FDOT, including specific positions that management represented as currently open." (*Id.* ¶ 66). Plaintiff alleges that her forced "immediate,

irrevocable" resignation on June 11, 2024 was made effective eight weeks later as "a calculated maneuver to insulate FDOT from scrutiny for coercing" her to resign. (*Id.* ¶ 68). Plaintiff further alleges that FDOT's internal investigation concluded that Defendant Hassan had not committed any Title VII or FCRA violations. (*Id.* ¶ 70). "Despite this conclusion, FDOT terminated Hassan's employment shortly after the investigation ended." (*Id.* ¶ 71).

On December 29, 2025, Plaintiff filed suit against FDOT. (Doc. 1). On February 13, 2026, FDOT moved to dismiss, and the Court granted FDOT's Motion on shotgun pleading grounds. (Doc. 15; Doc. 33). On May 19, 2026, Plaintiff filed an Amended Complaint (the "Amended Complaint") adding Defendant Hassan as a defendant in this action. Plaintiff asserts claims against FDOT under Title VII, 42 U.S.C. § 2000e to 2000e-17 for sex-based discrimination, religious discrimination, and retaliation. (Doc. 34). Plaintiff also asserts the same claims under the Florida Civil Rights Act (the "FCRA"), Fla. Stat. § 760.10, against Defendant Hassan. (*Id.*). Defendants now move to dismiss the Amended Complaint. (Doc. 34).

## II. LEGAL STANDARD

For purposes of deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). "Generally, under the Federal Rules of Civil Procedure, a complaint need only

contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III. ANALYSIS

### A. Shotgun Pleading

Under Rule 8, complaints must include "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Rule 10 requires plaintiffs to state "claims or defenses in numbered paragraphs" and "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." Fed. R. Civ. P. 10(b). "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).

Defendants argue that the Amended Complaint is a "shotgun pleading" because Plaintiff's eight counts against FDOT and Defendant Hassan incorporate the same set of factual allegations spanning Plaintiff's employment. (Doc. 37 at 9). The Court rejected this argument in its prior Order, and the law has not changed. (Doc. 33 at 9). Incorporation is problematic when "each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d

at 1321. That is not the case here. Additionally, as Plaintiff points out, it is clear based on Defendants' Motion that Defendants can "identify which allegations are relevant to the elements of which legal theories" and "which [statutes] govern which counts." (Doc. 39 at 9). Thus, the Amended Complaint is not a shotgun pleading. *See Charles v. GEO Grp. Inc.*, No. 22-13891, 2024 WL 1619911, at *2 (11th Cir. Apr. 15, 2024)[1] (explaining that the "underlying issue" of shotgun pleadings "is one of substance, not form" concerning "whether the complaint gave the defendants fair 'notice of the specific claims against them and the factual allegations that support those claims'") (citing *Weiland*, 792 F.3d at 1325).[2]

**B. Sex Discrimination in Violation of Title VII (Counts I & II)**

Title VII of the Civil Rights Act makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e–2(a)(1). There are two categories of discrimination under Title VII: disparate treatment and disparate impact. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir.

---

[1] Unpublished opinions of the Eleventh Circuit constitute persuasive, and not binding, authority. *See* 11th Cir. R. 36-2.

[2] To the extent Defendants seek to strike paragraphs of the Amended Complaint under Federal Rule of Civil Procedure 12(f), Defendants may request such relief by filing a motion to strike and briefing the issue. (Doc. 37 at 13–14); M.D. Fla. Local R. 3.01(b); *see Terrell v. Sec'y, Dep't of Veterans Affs.*, 98 F.4th 1343, 1356 (11th Cir. 2024) (a party does not raise an issue by raising "it in a perfunctory manner without supporting arguments or authority").

2010). Disparate treatment is the category at issue in this case. Disparate treatment involves employment discrimination with respect to compensation, terms, conditions, or privileges of employment because of an individual's membership in a protected category. *Id.* There are two theories of disparate treatment: (1) a discriminatory tangible employment action, such as termination, and (2) harassment that does not result in a tangible employment action and alters the terms and conditions of employment (traditionally referred to as "hostile work environment" harassment). *See id.*; *Johnson v. Booker T. Wash. Broad. Serv., Inc.*, 234 F.3d 501, 508 (11th Cir. 2000). Plaintiff asserts both theories of disparate treatment in Counts I and II respectively.

**1. Hostile Work Environment (Count I)**

"Defendants reincorporate[3] FDOT's prior arguments that Plaintiff does not plausibly allege conduct that was sexual in nature, directed at Plaintiff because of sex, or sufficiently severe or pervasive to alter the terms and conditions of employment." (Doc. 37 at 11). There are four factors courts should consider in determining whether harassment was severe or pervasive enough to alter an employee's terms or conditions of employment: "(1) the frequency of the conduct, (2) its severity, (3) whether it was 'physically threatening or humiliating, or a mere

[3] The Court will ignore any future attempts to incorporate by reference. M.D. Fla. Local R. 3.01(h) ("A motion, other legal memorandum, or brief may not incorporate by reference all or part of any other motion, legal memorandum, or brief.").

offensive utterance,' and (4) whether it unreasonably interfered with the employee's job performance." *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1302 (11th Cir. 2023) (citation omitted). The Eleventh Circuit has emphasized that Title VII is "not a federal 'civility code.'" *Id.* (citation omitted).

The Court has analyzed Defendants' arguments in its prior Order, and, as Defendants acknowledge, "[t]he Amended Complaint does not materially change that analysis." (Doc. 37 at 11). Indeed, the material facts have not changed. For efficiency, the Court incorporates the "Hostile Work Environment (Count II)" analysis as laid forth in its prior Order granting FDOT's Motion to Dismiss on shotgun pleading grounds. (Doc. 33 at 15–18).

To briefly summarize, Defendant Hassan's alleged conduct was sexual in nature and directed at Plaintiff because of her sex. Plaintiff alleges that Defendant Hassan was hostile toward women in the workplace, sexually propositioned Plaintiff the day before he threatened to hit her with a shovel, told Plaintiff women are "second class citizens[,]" ordered Plaintiff to "cover up" because male employees could not control themselves, said Plaintiff was "his[,]" and accused Plaintiff of "liking" male coworkers he overheard her speaking with. (Doc. 34 ¶¶ 18, 20, 34, 37–38, 40, 51). Plaintiff alleges harassment severe or pervasive enough to have altered the terms or conditions of her employment because it was physically threatening. For example, Plaintiff alleges that Defendant Hassan frequently yelled and slammed his phone in her presence, told her he hit his wife, threatened to strike her with a

shovel, and aggressively grabbed her by the arm and restrained her when she asked to leave work because she was ill. (*Id.* ¶¶ 16, 33, 31, 40). The alleged harassment also interfered with Plaintiff's job performance. For instance, Plaintiff alleges Defendant Hassan would not allow Plaintiff to disagree with him in public, leave his side during the workday, close her office door, or speak with other FDOT managers. (*Id.* ¶¶ 29–30). Therefore, Plaintiff has plausibly alleged Title VII hostile work environment harassment based on sex at this stage of the proceedings.

**2. Tangible Employment Action (Count II)**

Defendants argue that Count II should be dismissed because "Plaintiff again fails to plead a sex-based tangible employment action or constructive discharge." (Doc. 37 at 14). The Court disagrees.

"An adverse employment action is not only an element of the prima facie case, but an element of the claim itself." *McCone v. Pitney Bowes, Inc.*, 582 F. App'x 798, 800 (11th Cir. 2014) (citing *Holland v. Gee*, 677 F.3d 1047, 1056 (11th Cir. 2012)). Although it is true that "[w]hether an action causes significant enough harm to deter any employee conduct is . . . beside the point[,]" it is also required that "the injury asserted concern the terms or conditions of [Plaintiff's] employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 358 (2024).

Plaintiff's argument that the Amended Complaint contains sufficient detail to state a sex-based tangible employment action is well-taken. (Doc. 39 at 14). Plaintiff alleges that on May 3, 2024, Defendant Hassan confronted her about her complaint

to Human Resources, threatened to have her removed from FDOT, and within two weeks later "cancelled previously scheduled formal mentoring sessions[,]" which were "tied to Plaintiff's career progression within FDOT's supervisory track" including her "promotion eligibility, career trajectory, and earning potential" and were not cancelled for other employees. (Doc. 34 ¶¶ 58, 61, 87). The Court need look no further than the cancelled mentoring sessions. Regardless of whether Defendant Hassan cancelling mentoring sessions was "significant[,]" accepting Plaintiff's allegations as true, it certainly concerned the "terms or conditions" of Plaintiff's employment. (*Id.*); *Muldrow*, 601 U.S. at 358. Therefore, Plaintiff has plausibly alleged a discriminatory tangible employment action at this stage of the proceedings.

### C. Religious Harassment—Hostile Work Environment in Violation of Title VII (Count III)

Title VII also prohibits employers from discriminating against employees based on religion. 42 U.S.C. § 2000e–2(a)(1). Defendants argue that Count III should be dismissed because Plaintiff still does not plead severe or pervasive religious harassment. (Doc. 37 at 16). Defendants' argument is well-taken.

Defendants argue that "Plaintiff again attempts to bootstrap sex-based and supervisory conduct into a religious harassment claim[.]" (*Id.*). Plaintiff responds that "Hassan used his religious worldview as the stated justification for his sex-based domination of Plaintiff." (Doc. 39 at 16). However, Plaintiff's factual allegations do

not support this conclusion. Plaintiff rests her argument on Defendant Hassan's comment that "in his country, women are considered second class citizens" because Plaintiff views it as an "articulation of the religious and cultural framework he invoked[.]" (*Id.*). But Defendant Hasaan's alleged quote speaks for itself: he was harassing Plaintiff based on her sex, not her Christian faith, because in his view, "*women* are second class citizens[.]" (*Id.*) (emphasis added). Plaintiff's allegations of sexual harassment still cannot support her religious harassment claim where there is no indication that the sexual harassment was also based on her religion aside from Plaintiff's conclusory allegations to the contrary. *Lara v. Raytheon Tech. Serv. Co., LLC*, 476 F. App'x 218, 221 (11th Cir. 2012) ("[W]e agree with the district court that the facts [plaintiff] asserts do not constitute severe and pervasive harassment *on account of his religion*.") (emphasis added); *see also Alhallaq v. Radha Soami Trading, LLC*, 484 F. App'x 293, 296 (11th Cir. 2012) (concluding that the district court did not err in dismissing Title VII hostile work environment claim based on religion where plaintiff failed to plausibly allege the harassment was done on account of her religion).

The following factual allegations support Plaintiff's religious harassment claim: Defendant Hassan engaged in five unwelcome religious discussions with Plaintiff and once gave her a Quaran and expected her to read it despite knowing she is practicing Christian. (Doc. 34 ¶¶ 46–48). Plaintiff was employed at FDOT and supervised by Defendant Hassan for over a year. (Doc. 34 ¶ ¶ 11, 68). These

allegations alone, which amount to six instances of misconduct related to Plaintiff's religion, are insufficient to plausibly allege a hostile working environment based on Plaintiff's religion. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) ("A hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'") (citation omitted). Therefore, the Court will dismiss Count III.

**D. Retaliation in Violation of Title VII (Count IV)**

Title VII also prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]." 42 U.S.C. § 2000e–3(a). Defendants argue that Count IV should be dismissed because Plaintiff fails to allege "materially adverse retaliation." (Doc. 37 at 17). Not so.

"In the retaliation context, an adverse employment action is one that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Vincent v. Jefferson Cnty. Bd. of Educ.*, 152 F.4th 1339, 1353 (11th Cir. 2025) (citing *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Constructive discharge occurs when an employer discriminates against an employee

to the extent that "working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign" and the employee resigns under those circumstances. *Green v. Brennan*, 578 U.S. 547, 555 (2016) (citing *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004)).

Defendants overstate the Court's prior Order where the Court noted that "Plaintiff's [prior] Response fail[ed] to make any legal argument whatsoever regarding whether Plaintiff's resignation from FDOT was a constructive discharge and therefore an adverse employment action in retaliation for her complaints about Hassan's conduct." (Doc. 37 at 17–18; Doc. 33 at 21). It was unclear whether Plaintiff was conceding her constructive discharge theory at the time, and the Court indicated for Plaintiff's future reference that it would not accept Plaintiff's legal conclusions regarding Plaintiff's alleged constructive discharge as facts. (Doc. 33 at 21). The Court did not evaluate the merits of Plaintiff's constructive discharge theory in its prior Order.

Plaintiff alleges a retaliatory constructive discharge. Plaintiff alleges that "another FDOT manager told Plaintiff that if she recanted her statements about Hassan, her job could be salvaged." (Doc. 34 ¶ 60). Plaintiff further alleges that after Defendant Hassan learned about her Human Resources complaint, he told her that he had her in "the palm of his hand" and "threatened that he could have her removed from FDOT whenever he wanted." (*Id.* ¶ 58). Additionally, Plaintiff alleges that in

response to her complaint, Bilbao advised her that "if she wanted to survive at FDOT, she needed to 'put a smile on [her] face and shut up.'" (*Id.* ¶ 55).

Most importantly, Plaintiff alleges that a few hours after she filed her sexual harassment and retaliation EOO Complaint with FDOT's Equal Opportunity Office, "Plaintiff was summoned to meeting with senior FDOT management, including [Heffinger,] where she was told that her position was "no longer viable[,]" pressured "to resign immediately under threat of termination[,]" and falsely told "that if she were terminated, rather than permitted to resign, she would be permanently barred from seeking any other employment with FDOT, including specific positions that management represented as currently open." (*Id.* ¶¶ 64–66); *see Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action.") (citation omitted). Plaintiff also alleges that her immediate involuntary resignation was irrevocable and FDOT deferred her "effective separation date" as a "calculated maneuver" to avoid scrutiny for coercing Plaintiff's resignation. (Doc. 34 ¶ 68). Therefore, Plaintiff has plausibly alleged retaliation in violation of Title VII.

**E. FCRA Claims against Defendant Hassan (Counts V, VI, VII, & VIII)**

Defendants argue that Counts V, VI, VII, and VIII should be dismissed because the FCRA does not impose individual liability on supervisors. (Doc. 37 at 12). Defendants are correct. *Patterson v. Consumer Debt Mgmt. & Educ., Inc.*, 975

So. 2d 1290, 1292 (Fla. 4th DCA 2008); *Pacheco v. Waldo Acebo, M.D., P.A.*, 406 So. 3d 319, 323 n.7 (Fla. 3d DCA 2025) (quoting *Patterson*, 775 So. 2d at 323); *Khatabi v. Car Auto Holdings LLC*, 177 F.4th 1134, 1143 (11th Cir. 2026) (citations omitted); *Durham v. Seacrest Country Day Sch.*, No. 2:22-CV-732-SPC-KCD, 2023 WL 1796426, at *3 (M.D. Fla. Feb. 7, 2023) ("[T]he . . . FCRA do[es] not impose liability on individual employees or supervisors for acts of discrimination or retaliation."). Indeed, Plaintiff does not even "press the position" that Defendant Hassan is an "employer" who may be held liable under the FCRA. (Doc. 39 at 12). Instead, Plaintiff requests leave to file a second amended complaint to assert unidentified common law claims against Defendant Hassan. (*Id.* at 13).

The Court notes that Plaintiff has already had an opportunity to amend. (Doc. 33 at 23; Doc. 34). Also, Plaintiff's request in her Response is procedurally improper. Fed. R. Civ. P. 7(b)(1); *Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) (explaining that a party requesting leave to amend should file a motion setting forth the substance of the proposed amendment and parties may not "await a ruling on a motion to dismiss before filing a motion for leave to amend") (citations omitted). The Court declines to give Plaintiff a second opportunity to amend where amendment would be futile because the Court would decline to exercise supplemental jurisdiction over common law claims asserted against Defendant Hassan which would predominate Plaintiff's Title VII claims against FDOT and cause confusion and delay. *See* 28 U.S.C. § 1367(c); *Rowe v. City of Fort*

*Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002) (explaining that courts should consider "judicial economy, convenience, fairness, and comity" in deciding whether to exercise supplemental jurisdiction) (citation omitted); *Bennett v. S. Marine Mgmt. Co*., 531 F. Supp. 115, 117–18 (M.D. Fla. 1982) (holding that combining Title VII and state tort and contract claims would cause confusion and delay, which is at odds with important federal policies underlying Title VII). Therefore, the Court will dismiss Counts V, VI, VII, and VIII.

Based on the foregoing, it is ordered as follows:

1. Defendants Florida Department of Transportation and Moataz Hassan's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 37) is **GRANTED in part and DENIED in part** as follows:

    a. Counts III, V, VI, VII, and VIII of Plaintiff's Amended Complaint (Doc. 34) are **DISMISSED WITH PREJUDICE**.

    b. Defendants' Motion (Doc. 37) is **DENIED** as to Counts I, II, and IV of Plaintiff's Amended Complaint (Doc. 34).

2. The Clerk shall **TERMINATE** Defendant Moataz Hassan as a defendant in this action.

3. Defendant Florida Department of Transportation is **ORDERED** to file an answer to Counts I, II, and IV of Plaintiff's Amended Complaint (Doc. 34) within **14 days** of the date of this Order.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on July 20, 2026.

/s/ Anne C. Conway
Anne C. Conway
United States District Judge

Copies furnished to:

Counsel of Record